United States District Court
Southern District of Texas
**ENTERED**
May 09, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| MARK CLIFF SCHWARZER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:18-CV-00034 |
| | § | |
| DALE WAINWRIGHT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS, TO STRIKE CERTAIN PARAGRAPHS SET FORTH
IN PLAINTIFF'S AMENDED COMPLAINT, AND TO RETAIN CASE**

Plaintiff Mark Cliff Schwarzer ("Plaintiff"), appearing *pro se*, has filed this prisoner civil

rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the

Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2).  As discussed

in detail below, the undersigned recommends that certain claims be retained, that certain

paragraphs set forth in Plaintiff's Amended Complaint be struck, and that the remaining claims

be dismissed.

**I.       JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has

been referred to the undersigned magistrate judge for case management and making

recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ") and is currently confined at the Duncan Unit.[1]  When Plaintiff filed his original complaint, he was housed at the Stevenson Unit, in Dewitt County, in the Southern District of Texas.  Plaintiff named the following defendants in his original complaint: Dale Wainwright, Robert Beard, Jr., Pamela R. Mendez-Banda, Bryan Collier, and Jennifer Smith ("Original Defendants").  (Doc. No. 1.)  Plaintiff sought declaratory, injunctive, and equitable relief.  *Id.* at 9.

Plaintiff's original complaint contains several allegations.  (Doc. No. 1.)  Plaintiff alleges that the Original Defendants improperly denied his mail, which consisted of phone tracking sheets and forms used for a role-playing game.  *Id.* at 6.  Plaintiff states that these materials were confiscated as stationery and deemed contraband.  *Id.*  Plaintiff alleges that the Director's Review Committee ("DRC") upheld this denial and concluded that the forms in question contradicted TDCJ Board Policy 03.91 (Board Policy 03.91).  *Id.* at 7.  Plaintiff asserts that this decision was arbitrary, and that the Original Defendants denied Plaintiff due process by failing to follow their own grievance procedures.  *Id.* at 8.

In a memorandum and opinion issued on October 2, 2019, the district court (Hoyt, J.) construed Plaintiff's original complaint as asserting the following claims: (1) a denial of access to the courts, (2) an interference with correspondence based on the prison's inspection of his mail, and (3) a due process violation based on the prison's failure to comply with its own rules and regulations regarding the grievance process.  (Doc. No. 14.)  The district court dismissed

---

[1] Plaintiff filed a Notice of Change of Address on August 5, 2019, indicating that he had been transferred to the Duncan Unit.  (Doc. No. 12.)  The Duncan Unit is located in Angelina County, in the Eastern District of Texas.

these claims as frivolous and with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  *Id.* at 6.

Plaintiff appealed the dismissal to the United States Court of Appeals for the Fifth Circuit.  (Doc. No. 19.)  The Fifth Circuit considered whether the district court properly dismissed Plaintiff's § 1983 claims as frivolous.  *See Schwarzer v. Wainwright*, No. 19-41011, 2021 WL 6060002, at *1 (5th Cir. Dec. 17, 2021).[2]  First, the court liberally construed Plaintiff's First Amendment claims as asserting that "(1) the prison's policy of prohibiting inmates from receiving stationery supplies via mail violates the First Amendment and (2) the defendants violated his First Amendment rights by denying his mail based on Board Policy 03.91."  *Id.*

The court of appeals held that these First Amendment claims could not be dismissed as frivolous, because the record did not demonstrate whether Plaintiff's claims regarding the prison's mail policies were "based on an indisputably meritless legal theory."  *Id.* (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)).  The Fifth Circuit explained that *Turner v. Safley* provides the proper framework in making this determination, which asks whether the prison's policy regarding mail censorship is "reasonably related to legitimate penological interests."  *Schwarzer*, 2021 WL 6060002, at *1 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Fifth Circuit affirmed the dismissal of Plaintiff's due process claim, which alleged that Original Defendants failed to follow prison rules related to the grievance procedure, because the claim did not present a constitutional violation.  *Schwarzer*, 2021 WL 6060002, at *1 (citing *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009)).

The court of appeals additionally held that Plaintiff, as a *pro se* litigant, should have been afforded an opportunity to amend his complaint before the district court dismissed his claims with prejudice.  *See Schwarzer*, 2021 WL 6060002, at *1-*2 (citing *Brewster v. Dretke*, 587 F.3d

---

[2]  The Fifth Circuit's decision is contained in this Court's docket as document number 40.

764, 767-68 (5th Cir. 2009)).  Plaintiff asserted in his appellate brief that he was not permitted to participate in the DRC process for reviewing denials of mail, and that he was therefore deprived of his First Amendment rights without due process.  *See Schwarzer*, 2021 WL 6060002, at *1-*2.  The court of appeals concluded that Plaintiff could have amended his complaint to allege this nonfrivolous procedural due process claim.  *Id.* at *2.

For these reasons, the court of appeals vacated the district court's judgment and remanded in part for further proceedings with respect to Plaintiff's First Amendment free speech and procedural due process claims.  *Id*.  The judgment was affirmed in all other respects.  *Id.*

## III.    PLAINTIFF'S AMENDED COMPLAINT

In light of the Fifth Circuit's remand (Doc. No. 40), the undersigned directed Plaintiff to file an amended complaint setting forth the factual basis in support of his: (1) First Amendment free speech claims pertaining to the prison's policy of the receipt of stationery supplies via mail and the denial of such mail; and (2) procedural due process claims in connection with his participation in the DRC's process for reviewing the denial of mail.  (Doc. No. 43, p. 4.)  The undersigned further instructed Plaintiff to list the defendant or defendants he seeks to sue with respect to these two claims, to clearly state the remedies he seeks against each listed defendant, and to set forth whether he sues each defendant in his or her individual capacity, official capacity, or both.  *Id.*

On March 28, 2022, Plaintiff filed his Amended Complaint, naming the following defendants: (1) Dale Wainwright, former Chairman of the Texas Board of Criminal Justice (TBCJ); (2) Patrick O'Daniel, current Chairman of the TBCJ; (3) Derrelynn Perryman, Vice-Chairman of the Board; (4) Larry Miles, Secretary of the TBCJ; (5) E. F. DeAyala, TBCJ member; (6) Molly Francis, TBCJ member; (7) Faith Johnson, TBCJ member; (8) Sichan Siv,

TBCJ member; (9) Eric Nichols, TBCJ member; (10) Rodney Burrow, TBCJ member; (11) Bryan Collier, TDCJ Executive Director; (12) Bobby Lumpkin, TDCJ Director; (13) Leonard Echessa, Director of the DRC; (14) Jennifer Smith, Program Supervisor of the DRC; (15) Arica D. Flores, Mailroom Supervisor at the Stevenson Unit; (16) Chris Norseworthy, former Warden at the Duncan Unit; and (17) Stacie A. Walton, Mailroom Supervisor at the Duncan Unit (collectively "Defendants").[3]  (Doc. No. 45, p. 3; Doc. No. 45-1, pp. 1-3.)  In addition to declaratory and monetary relief, Plaintiff seeks injunctive relief in the form of: (1) restoring access to outside vendors so that family and friends may purchase stationery for inmates; and (2) allowing inmates to provide input to the DRC's decision-making process.  (Doc. No. 45-1, pp. 16-18.)

### A.  *Plaintiff's free speech and due process claims pertaining to receipt of mail containing stationery supplies.*

In the Amended Complaint, Plaintiff alleges the following facts in support of his First Amendment free speech and procedural due process claims.  In 2018, prison officials denied his mail, which consisted of blank phone tracking logs and game sheets.  (Doc. No. 45-1, pp. 3-4.) These materials were confiscated as stationery and deemed contraband.  *Id.*  The DRC upheld this denial of mail to Plaintiff and concluded that the forms in question contradicted Board Policy 03.91.  *Id.* at 4.

According to Plaintiff, TBCJ members defined the relevant policy in Board Policy 03.91, which governs whether certain mail shall be deemed to be contraband.  (Doc. No. 45-1, p. 3.) Plaintiff, however, believes that Board Policy 03.91 contains no rule to prohibit blank forms.  *Id.* at 4.  As further support for his claim that his First Amendment rights were violated, Plaintiff

---

[3]  Plaintiff does not list Defendants Beard or Mendez-Banda in his Amended Complaint.  The undersigned recommends, therefore, that these defendants be dismissed from this action.

states that "dozens of gaming books pass through [prison] mailrooms every year." *Id.*
According to Plaintiff, any policy change which characterizes gaming forms as contraband
deprives inmates of quality paper and design and forces inmates to purchase stationery of poor
quality at the commissary. (Doc. No. 45-1, p. 4.)

Plaintiff asserts that the DRC's decision was arbitrary and without any basis under Board
Policy 03.91. (Doc. No. 45-1, p. 5.) Plaintiff states that "[r]ather than correct the mailroom at
Stevenson regarding the policy, the DRC decided to prosecute Plaintiff for asking his family to
create and send blank forms for his personal use." *Id.* at 11. According to Plaintiff, DRC
Program Supervisor Smith also served as the reviewing officer for Plaintiff's Step 2 grievance, in
which Plaintiff complained about the confiscation of his mail and subsequent DRC decision. *Id.*
Plaintiff complains that Smith's role as the respondent in the Step 2 grievance constituted a
conflict of interest as it interfered with her duties as the DRC Program Supervisor. *Id.*

Plaintiff holds DRC Director Echessa and DRC Program Supervisor Smith responsible
for failing to adhere to Board Policy 03.91 and violating his free speech and due process rights.
(Doc. No. 45-1, p. 11.) Plaintiff holds the TBCJ members responsible for failing to define the
policy in TDCJ Board Policy 03.91 in such a manner to protect Plaintiff's constitutional rights.
*Id.* Plaintiff further asserts that: (1) former TDCJ Board Chairman Wainwright "was integral in
the decision-making process to deprive inmates of quality stationery in 2014"; (2) TDCJ
Executive Director Collier has a duty to protect Plaintiff from constitutional violations resulting
from "onerous mail restrictions"; and (3) TDCJ Director Lumpkin is responsible for protecting
inmates under his care and should have been "aware of the mail violations by overzealous
clerks." *Id.* at 13-14.

**B. Plaintiff makes allegations and requests for relief that are outside the scope of the Fifth Circuit's remand, despite the Court's prior warning against doing so. Those allegations should be disregarded and struck from the Amended Complaint.**

Plaintiff seeks to bring numerous allegations, claims, and requests for relief that are outside the scope of the Fifth Circuit's remand as well as the undersigned's order directing Plaintiff to file an amended complaint, which clearly warned Plaintiff that "any allegations raised in his amended complaint that seek to raise claims other than the above-identified free speech and procedural due process claims" would be disregarded.  (Doc. No. 43, p. 5.)  Plaintiff impermissibly sets forth the following in his Amended Complaint:

- Mail clerks have interfered with Plaintiff's subscriptions to National Geographic, Popular Mechanics, Popular Science, and newspapers.  (Doc. No. 45-1 at ¶¶ 12-13.)

- Mail clerks have interfered with Plaintiff's numerous book orders.  (Doc. No. 45-1 at ¶ 14.)

- Mail Clerks have interfered by defining certain greeting cards as contraband. (Doc. No. 45-1 at ¶ 15.)

- Members of the Board and the administration devised a new policy in 2021 to interfere with Plaintiff's freedom of expression.  (Doc. No. 45-1 at ¶ 17-18.)  In one of the new restrictions, inmates are only allowed ten photographs per envelope.  *Id.* at 18.  The new restrictions further restrict incoming paper to only plain white paper.  *Id.* at 19-20.  Under the 2021 policy, letters sent to offenders are prohibited from containing perfume, stickers, lipstick, bodily fluids, powdery substances, or artwork.  *Id.* at 20.  The 2021 policy adversely impacts donations to inmates from willing participants.  *Id.* at 24.

- While indicating his support for drugs to be banned, Plaintiff does not believe that the new policy's ban on suspicious substances is justified.  (Doc. No. 45-1 at ¶ 21.)

- Plaintiff references an alternative to the policy's allowance of only ten photographs per envelope pursuant to a "Snap n' Send Program."  (Doc. No. 45-1 at ¶ 23.)

- An updated policy effective June 25, 2021 restricts an inmate's ability to receive

and possess sexually explicit materials.  (Doc. No. 45-1 at ¶¶ 25-28.)

- Plaintiff was subjected to a disciplinary hearing for reading a magazine with the name of another inmate on the label.  (Doc. No. 45-1 at ¶ 29.)

- Inmates are subject to an unwritten rule requiring inmates to write their name and number in their books and magazines.  (Doc. No. 45-1 at ¶ 30.)

- In 2014, funds for the indigent mail program were slashed resulting in inmates only being entitled to mailing material for five letters a month (Doc. No. 45-1 at ¶ 31.)

- A policy enacted at some unspecified date limited how many stamps an inmate could possess.  (Doc. No. 45-1 at ¶ 32.)

- Mailroom Supervisor Flores instituted artificial rules against Plaintiff when he: (a) returned a legal pleading to Plaintiff on December 31, 2018 for failure to write his full first name on the envelopes; (b) charged Plaintiff $ 8.00 for a $7.45 mailing; (c) destroyed a greeting card without notice; (d) removed the protective cover for a magazine; (e) punched holes in post cards and foreign stamps; (f) denied greeting cards without a signature; and (g) failed to return receipts of legal mail.  (Doc. No. 45-1 at ¶ 33.)

- Former Duncan Unit Warden Norseworthy flicked a sealed envelope at Plaintiff in anger because Plaintiff did not write his full first name on the envelope. (Doc. No. 45-1 at ¶ 42.)

- Walton, the Mailroom Supervisor at the Duncan Unit, committed mail fraud by intentionally withholding mail for eight weeks before returning the mail to Plaintiff (Doc. No. 45-1 at ¶ 43.)

- Walton has stopped Plaintiff's mail on other occasion, including letters intended for senators, newspapers, and governmental institutions.  (Doc. No. 45-1 at ¶ 44.)

- The unit's commissary fails to carry quality paper products and greeting cards. (Doc. No. 45-1 at ¶ 46.)

- As TDCJ "is dumping" nearly $25 million every year into the Texas General Fund, no excuse exists to overcharge and under deliver products through the Commissary (Doc. No. 45-1 at ¶ 47.)

- The new 2021 mail restrictions on mail have little to do with penological

interests and cannot survive under constitutional scrutiny.  (Doc. No. 45-1 at ¶ 52.)

The preceding allegations constitute separate transactions and occurrences unrelated to Plaintiff's free speech and procedural due process claims that challenge the prison's policy on the receipt of stationery supplies via mail and the denial of such mail.  Again, the undersigned warned Plaintiff that raising allegations in his amended complaint other than the above-identified free speech and procedural due process claims would be disregarded.  (Doc. No. 43, p. 5.) Accordingly, the undersigned recommends that Plaintiff's allegations and claims identified in Paragraphs 12-15, 17-33, 42-44, 46-47, and 52 be **DISREGARDED AND STRUCK** from Plaintiff's Amended Complaint.

Plaintiff further seeks injunctive and monetary relief related solely to the allegations recommended to be disregarded and struck from the Amended Complaint.  Accordingly, the undersigned also recommends that Plaintiff's requests for injunctive and monetary relief identified as follows also be **DISREGARDED AND STRUCK** from this case:

- Injunctive relief to reverse the latest mail restrictions enacted on June 25, 2021 (¶ 56(c));

- Injunctive relief to allow monetary deposits into the Inmate Trust Fund and/or purchase of E-Comm for any inmate from any authority (¶ 56(d));

- Injunctive relief to provide indigent inmates with sufficient paper, envelopes, stamps, and pens for at least five letters every week (¶ 56(e));

- Injunctive relief to provide brand name paper products and writing utensils through commissary (¶ 56(f));

- Injunctive relief to authorize the sharing of reading material without interference from officers (¶ 56(h));

- Injunctive relief to deny the "order" to write a name and number on books and magazines (¶ 56(i));

- Injunctive relief to reverse unofficial mandate for inmates to write their name and number on stamps and envelopes (¶ 56(j));

- Injunctive relief to authorize extra stamps or at least 100 stamps for inmates who mail frequent packages or legal pleadings (¶ 56(k));

- Injunctive relief to ensure "that photographs will not be prohibited when the feel of a photograph has a unique quality that can bring a person closer to the scene" (¶ 56(l));

- Compensatory relief for the costly restriction of photos (relevant portion of ¶ 56(o));

- Compensatory relief for the confiscation of magazines and newspaper delays (¶ 56(p));

- Compensatory relief for the arbitrary policies, directives, and rules which authorize mail fraud (¶ 56(r));

- Compensatory relief for the mail fraud committed by Mail Supervisor Walton (¶ 56(s));

- Compensatory relief for the assault committed by former Duncan Unit Warden Norseworthy (¶ 56(t)); and

- Additional compensatory relief should mail fraud be discovered at the Duncan Unit (¶ 56(u)).

Finally, a review of the paragraphs stricken from Plaintiff's Amended Complaint reveals that he seeks to raise claims against former Duncan Warden Norseworthy and Duncan Unit Mailroom Supervisor Walton. These claims arise in connection with events that occurred at the Duncan Unit, which is located in Angelina County, Texas. As these events arose outside of the Corpus Christi Division of this Court, Plaintiff must raise such claims against Defendants Norseworthy and Walton in the Lufkin Division of the Eastern District of Texas. Accordingly, the undersigned recommends that Defendants Norseworthy and Walton be dismissed without prejudice from this action.

## IV.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the

complaint and dismiss it without service of process if the Court finds the complaint frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. § 1915A.  *See* 28 U.S.C. § 1915(e)(2)(B)

(providing that a court shall review an *in forma pauperis* complaint as soon as practicable and

dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted,

or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable

basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989).  A claim has no arguable basis in

law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the

violation of a legal interest which clearly does not exist."  *Davis v. Scott*, 157 F.3d 1003, 1005

(5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless."

*Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true,

viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger*, 188 F.3d 322, 324

(5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is

entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim

unless the plaintiff would not be entitled to relief under any set of facts or any possible theory

that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege

sufficient facts in support of its legal conclusions that give rise to a reasonable inference that

Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

## V.   DISCUSSION

### A.  Eleventh Amendment immunity and official capacity.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their

official capacities).

To the extent that Plaintiff sues all named defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, the undersigned recommends that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### B. First Amendment.

#### 1. Plaintiff's First Amendment claims should be retained.

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (*per curiam*); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89).

Plaintiff's allegations, taken as true, indicate that Plaintiff's First Amendment rights may have been violated when he was prohibited pursuant to Board Policy 03.91 from receiving stationery supplies, consisting of blank phone tracking logs and game sheets, via mail at the Stevenson Unit. Accordingly, the undersigned recommends that Plaintiff's First Amendment claims be retained past screening. The undersigned now turns to consider the more complex

question as to which of the many defendants identified should be retained regarding Plaintiff's

First Amendment claims.

### C. Proper defendants.

#### 1. Individual capacity claims for monetary relief.

"Personal involvement is an essential element of a civil rights cause of action."

*Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  It is well established that a prison

supervisor cannot be held liable for the misconduct of his or her subordinates.  *See Thompkins v.*

*Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  There is no vicarious or *respondeat superior* liability of

supervisors under § 1983.  *Id.* at 303-04.  *See also Carnaby v. City of Houston*, 636 F.3d 183,

189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for

supervisory officials).  "Supervisory officials may be held liable only if: (i) they affirmatively

participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional

policies that causally result in plaintiff's injury."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d

924, 929 (5th Cir. 1992).

Plaintiff's allegations, accepted as true, indicate that: (1) Mailroom Supervisor Flores

confiscated Plaintiff's stationery supplies, consisting of blank phone tracking logs and game

sheets; (2) TBCJ Chairman O'Daniel and the members of the TBCJ implemented Board Policy

03.91, which caused Plaintiff's injury in connection with the denial of his mail containing the

stationery supplies; and (3) DRC Director Echessa and DRC Program Supervisor Smith upheld

the denial of mail containing stationery by arbitrarily concluding that the forms in question

contradicted Board Policy 03.91.  Accordingly, the undersigned recommends that Plaintiff's First

Amendment claims be retained against the TBCJ executive officials and members, DRC Director

Echessa, and DRC Program Supervisor Smith in their individual capacities for monetary relief.

14 / 22

Plaintiff sues Executive Director Collier and Director Lumpkin strictly in their supervisory roles for failing to protect Plaintiff from constitutional violations. (Doc. No. 45-1 at ¶¶ 48-49.) While either one or both of these defendants may be an appropriate official to provide injunctive relief should Plaintiff prevail, they are not viable defendants in their individual capacity for monetary damages. Collier and Lumpkin had no personal involvement in the facts of this case. Likewise, Plaintiff sues former Board Chairman Wainwright based on his conclusory allegation that he was integral to the decision-making process in 2014 to deprive Plaintiff of quality stationery. (Doc. No. 45-1 at ¶ 45.) Plaintiff alleges no specific facts to indicate that Wainwright had any personal involvement in the denial of Plaintiff's stationery at the Stevenson Unit or otherwise played a role in implementing Board Policy 03.91.

Accordingly, the undersigned recommends that Plaintiff's First Amendment claims against Defendants Collier, Lumpkin, and Wainwright in their individual capacities for monetary relief be dismissed with prejudice for failure to state a claim for relief.

### 2. *Official capacity claims for injunctive relief.*

Plaintiff further seeks declaratory and injunctive relief with respect to his First Amendment claims. The Court must now consider whether such relief has been rendered moot by his transfer from the Stevenson Unit to the Duncan Unit during the pendency of this case.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In other words, if a controversy between parties resolves to the point that they no longer qualify as "'adverse parties with sufficient legal interests to maintain the litigation,'" a court is without power to entertain the particular claim. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 354 (5th Cir.

2006) (*per curiam*)).  Courts, therefore, lack "constitutional jurisdiction" to resolve an issue

where there is no Article III controversy.  *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir.

1999).

Generally, where an inmate challenges conditions of confinement at a particular prison

facility, the transfer of the inmate out of that facility generally renders moot any claims for

injunctive or declaratory relief moot against defendants at that unit.  *See Herman v. Holiday*, 238

F.3d 660, 665 (5th Cir. 2001) (plaintiff's transfer to a different prison facility rendered his claims

for declaratory and injunctive relief moot); *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d

1078, 1084 (5th Cir. 1991) (inmate's transfer from county jail to state prison rendered moot his

claims for injunctive relief); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex.

Dec. 11, 2017) (prisoner's transfer from a prison unit renders moot his claims of deliberate

indifference to his health when seeking injunctive relief against the defendants at that unit).

Despite this general rule, an exception to the mootness doctrine lies in controversies that

are "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S.Ct. 1532,

1540 (2018).  The exception is available where "'(1) the challenged action [is] in its duration too

short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable

expectation that the same complaining party [will] be subject to the same action again.'"

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (alterations in original)

(quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

In certain circumstances where an inmate is transferred to another prison, an inmate may

avoid dismissal on mootness grounds by identifying in his complaint a statewide or prison-

system policy that led to the constitutional violations which remain ongoing at the new prison

unit.  *See Oliver*, 276 F.3d at 741.  *See also Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir.

2004) (reversing district court's dismissal of inmate's complaint on mootness grounds, concluding that inmate was not seeking injunctive relief for a condition specific to a particular prison, but rather was seeking relief from a condition that stems from a system-wide policy). Such allegations of a system-wide policy relate to the principle as to whether an alleged constitutional violation is "capable of repetition yet evading review." *Oliver*, 276 F.3d at 741 (citation omitted).

Plaintiff has identified a prison-wide policy, Board Policy 03.91, which governs whether certain mail may be confiscated as contraband. Despite being transferred to the Duncan Unit, Plaintiff remains subject to Board Policy 03.91 which prohibits him from receiving similar stationery supplies through the mail. Plaintiff's First Amendment claims, therefore, remain ongoing. *See Kingdomware Techs., Inc*, 579 U.S. at 170.

Plaintiff has identified numerous officials as being the appropriate party or parties to provide him with the injunctive relief. Further factual and legal development of Plaintiff's First Amendment claims will be beneficial in determining which defendant or defendants are capable of effectuating any injunctive relief in this case should Plaintiff prevail. Accordingly, the undersigned recommends that Plaintiff's First Amendment claims related to the provisions of Board Policy 03.91 be retained against Defendants Collier, Lumpkin, O'Daniel, TBCJ executive officials, and TBCJ members in their official capacities for declaratory and injunctive relief.

Plaintiff's First Amendment claims seeking injunctive relief against the remaining defendants in their official capacities are subject to dismissal. Mailroom Supervisor Flores, as an official employed at the Stevenson Unit, lacks authority to effectuate any prospective injunctive relief on behalf of Plaintiff, who is currently housed at a different prison. *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) ("[Plaintiff] does not have standing to pursue

injunctive relief because [Defendant] is without authority to redress his injuries."). Likewise, Wainwright lacks the authority to effectuate any prospective injunctive relief as he no longer is Chairman of the TBCJ. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged). Plaintiff otherwise fails to allege any facts to suggest that DRC Director Echessa and DRC Program Director Smith would have the requisite authority to grant injunctive relief with respect to Board Policy 03.91 and Plaintiff's ability to receive certain stationery supplies by mail.

Accordingly, the undersigned recommends that Plaintiff's First Amendment claims seeking declaratory and injunctive relief against Flores, Wainwright, Echessa, and Smith in their official capacities be dismissed with prejudice for failure to state a claim for relief.

### D. Procedural due process.

In the decision remanding this case to this Court, the Fifth Circuit set forth the relevant legal principles as follows with regard to Plaintiff's procedural due process claim:

> Inmates are entitled to procedural due process protections in connection with the denial of mail, including notice and an opportunity to be heard. *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds by Abbott*; *Prison Legal News v. Livingston*, 683 F.3d 201, 222 (5th Cir. 2012). Traditional procedural due process arguably requires a right to object and a "right to participate in DRC's consideration of the appeal, even informally or through written submissions." *Prison Legal News*, 683 F.3d at 224 (*dictum*); *see United States v. Gonzalez*, 250 F.3d 923, 926 (5th Cir. 2001) (noting that *dicta* are nonbinding but may be persuasive).

*Schwarzer*, 2021 WL 6060002, at *3-*4.

Plaintiff alleges that DRC Director Echessa and DRC Program Supervisor Smith upheld the denial of his stationery mail in an arbitrary manner and without any basis under TDCJ Board Policy 03.91. (Doc. No. 45-1, pp. 5, 11.) Plaintiff's allegations further suggest that: (1) Plaintiff

was not allowed to provide any input with regard to the DRC's decision-making process; and (2) DRC Program Supervisor Smith operated under a conflict of interest when she also denied Plaintiff' Step 2 grievance complaining about the confiscation of his mail and subsequent DRC decision. (Doc. No. 45-1, pp. 11, 16.) Accordingly, the undersigned recommends that Plaintiff's procedural due process claim be retained against Defendants Echessa and Smith in their individual capacities for monetary relief.

Liberally construed, Plaintiff's allegations suggest that the DRC has in place a policy whereby inmates are not provided an opportunity to be heard on appeals to the DRC from decisions to deny mail. To the extent that Plaintiff seeks injunctive relief in the form of allowing inmates to provide input at a DRC appeal, it appears that DRC Director Echessa would be the best defendant capable of providing him with the relief requested should Plaintiff prevail. Accordingly, the undersigned recommends that Plaintiff's procedural due process claim be: (1) retained against Echessa in his official capacity for declaratory and injunctive relief; and (2) dismissed with prejudice against Smith in her official capacity for declaratory and injunctive relief for failure to state a claim for relief.

## VI.   RECOMMENDATION

For purposes of § 1915(e)(2)(B), Plaintiff has stated sufficient facts that, if true, state:

(1) First Amendment claims against the following Defendants in their individual capacities for monetary relief: **Mailroom Supervisor Arica D. Flores, TBCJ Chairman Patrick O'Daniel, TBCJ Vice-Chairman Derrelynn Perryman, TBCJ Secretary Larry Miles, TBCJ member E. F. DeAyala, TBCJ member Molly Francis, TBCJ member Faith Johnson, TBCJ member Sichan Siv, TBCJ member Eric Nichols, TBCJ member Rodney Burrow, DRC Director Leonard Echessa, and DRC Program Supervisor Jennifer Smith;**

(2) First Amendment claims against the following Defendants in their official capacities for injunctive and declaratory relief: **TDCJ Executive Director**

**Bryan Collier, TDCJ Director Bobby Lumpkin, TBCJ Chairman Patrick O'Daniel, TBCJ Vice-Chairman Derrelynn Perryman, TBCJ Secretary Larry Miles, TBCJ member E. F. DeAyala, TBCJ member Molly Francis, TBCJ member Faith Johnson, TBCJ member Sichan Siv, TBCJ member Eric Nichols, and TBCJ member Rodney Burrow**;

(3) Procedural due process claim against the following Defendants in their individual capacities for monetary relief: **DRC Director Leonard Echessa, and DRC Program Supervisor Jennifer Smith**; and

(4) Procedural due process claim against **DRC Director Leonard Echessa** in his official capacity for declaratory and injunctive relief.

Accordingly, the undersigned recommends that these claims be **RETAINED**. The undersigned will order service as to these defendants by separate order. The undersigned further recommends that:

(1) Plaintiff's allegations and claims identified in Paragraphs 12-15, 17-33, 42-44, 46-47, and 52 be **DISREGARDED AND STRUCK** from Plaintiff's Amended Complaint;

(2) Plaintiff's requests for injunctive relief identified in Paragraphs 56(c), (d), (e), (f), (h), (i), (j), (k), (l), relevant portion of (o),[4] (p), (r), (s), (t), and (u) be **DISREGARDED AND STRUCK** from Plaintiff's Amended Complaint;

(3) **Former Duncan Unit Warden Chris Norseworthy and Mailroom Supervisor Stacie A. Walton** be **DISMISSED without prejudice** from this action;

(4) Plaintiff's claim for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment;

(5) Plaintiff's First Amendment claims against **TDCJ Executive Director Bryan Collier, TDCJ Director Bobby Lumpkin**, and **former TBCJ Chairman Dale Wainwright** in their individual capacities for monetary relief be **DISMISSED with prejudice** for failure to state

---

[4] The undersigned makes no recommendation to strike the portion of Paragraph 56(o) seeking compensatory relief for costly restrictions of mail, to the extent it references the denial of stationery supplies at the Stevenson Unit.

a claim for relief;

(6) Plaintiff's First Amendment claims seeking declaratory and injunctive relief against **Mailroom Supervisor Arica D. Flores, former TBCJ Chairman Dale Wainwright, DRC Director Leonard Echessa, and DRC Program Supervisor Jennifer Smith** in their official capacities be **DISMISSED with prejudice** for failure to state a claim;

(7) Plaintiff's procedural due process claim seeking declaratory and injunctive relief against **DRC Program Supervisor Jennifer Smith** in her official capacity be **DISMISSED with prejudice** for failure to state a claim for relief; and

(8) **Robert Beard, Jr. and Pamela R. Mendez-Banda** be **DISMISSED without prejudice** from this action.

## VII.    NOTICE

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on May 6, 2022.

MITCHEL NEUROCK
United States Magistrate Judge